Eastern District of Kentucky
F I L E D

NOV 3 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 06-59-GWU

DARLA J. ABNER,                                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Abner

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Abner

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Abner

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Abner

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Abner

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Abner suffered from

osteoporosis, a Vitamin D deficiency, fibromyalgia, a history of a left foot fracture

(now well healed) and a history of synovitis of the right foot (now healed).  (Tr. 22).

He concluded that these conditions rendered the plaintiff unable to perform more

than a limited range of light level work.  (Tr. 23).  Based on evidence from a

vocational expert (VE), Abner could perform her past relevant work as a bank teller,

as performed in the national economy, as well as her sales clerk job; additionally,

specific alternative light and sedentary jobs were available.  (Tr. 22-23).

The VE had been asked to take into account the following set of restrictions:

(1) a restriction to light level work, (2) an inability to climb ladders and (3) an ability

to climb stairs or crawl only occasionally.  (Tr. 390-390).  The VE indicated that the

plaintiff's bank teller past work could be done with those parameters, but that there

might be a complication with the exact type of sales clerk job held; other sales clerk

jobs would be possible, however (Tr. 390). Limitations mentioned by Dr. Paul Nicholls (Tr. 328) would be compatible with some specific light and sedentary jobs. (Tr. 392-393).

On the other hand, the VE admitted that restrictions cited by Dr. John Watts would not allow any of her past jobs to be done, and no other jobs would be possible, either. (Tr. 390-391). Limitations given in a March, 2003 letter by Dr. Kelly Cole (Tr. 330) would similarly allow no jobs to be performed. (Tr. 392).

The ALJ rejected Cole's assessment as being inconsistent with his/her actual treatment notes and "an accommodation in an attempt to help the claimant with her claim for disability benefits"; he also noted that he believed it was inconsistent with the plaintiff's employer's statement some six weeks earlier that Abner was "presently employed" and had an acceptable ability to function. (Tr. 16). The ALJ also rejected the opinion of Dr. Watts as not being supported by his treatment notes, nor other evidence of record, such as the activities questionnaire the plaintiff herself completed in Exhibit 4E, and also felt the opinion's impact was lessened since it was having been made after seeing the plaintiff only once; it was opined that the assessment, again, "appears to be an accommodation in an attempt to help the claimant with her claim for disability benefits." (Tr. 19). Finally, the ALJ also rejected the March, 2003 statement of Lisa DeGnore that the plaintiff would not be able to return to work, as not being consistent with DeGnore's acquiescence in the plaintiff's

8

desire to return to work and later remarks about deconditioning and normal x-rays. (Tr. 17-18).  The plaintiff, however, argues that the rejection of any of the three opinions was error.

The plaintiff originally alleged disability since August, 2002 due to fibromyalgia, fatigue, panic attacks, arthritis, and tendonitis in the wrist and feet.  (Tr. 93).

The plaintiff was seen by Steven Sartori the month of her alleged onset, mainly complaining of left foot pain. (Tr. 147).  It became obvious that she was been followed by orthopedic specialists, Doctors Catron and DeGnore, for these problems with Sartori's comment at one point that "work disposition should come from the office of the specialist."  (Tr. 146).  The plaintiff also reported that she had fibromyalgia (Tr. 147), which was later confirmed by a neurosurgeon (Tr. 146).  Dr. Sartori himself recorded few original physical examination findings of his own in the following months, although he did reference findings by specialists.  (Tr. 146-147).

Evidence from the office of Neurosurgeon William Brooks indicates that a total body scan (Tr. 140), lumbar spine MRI (Tr. 141), Rheumatoid factor laboratory result (Tr. 143) and sensory and motor physical examination data (Tr. 139), all in the last part of 2002, were normal.  There was some cervical spine abnormality at C3-4 seen on a cervical spine MRI (Tr. 141).  The neurosurgeon felt that there were no

9

Abner

neurosurgical solutions and that her symptoms were more consistent with fibromyalgia, so that he would make a referral to a rheumatologist.

Exhibit 2F contained a "Disability Claim" form signed by Charles Catron.  He opined that the plaintiff could engage in no bending or squatting, lifting more than 20 pounds or work above ground, apparently based on the results of lumbar x-rays.  (Tr. 155).

In November, the plaintiff was seen by Orthopedic Specialist Lisa DeGnore regarding her foot pain, at the request of Dr. Catron.  (Tr. 163).  DeGnore found the patient to have a healed second metatarsal stress fracture on the left and synovitis and an early hammertoe deformity on the right.  (Tr. 162).  The doctor concluded that "when her back improved," she could return to work in athletic shoes.  (Id.).

The plaintiff returned to see Sartori twice before her follow-up with Dr. DeGnore.  Sartori detected tenderness on the ball of her right foot and elevated blood pressure; an EKG was normal.  (Tr. 145A).  Sartori later indicated that, again, he would defer to the specialists' expertise regarding her work disposition.  (Tr. 145A).

The plaintiff told Lisa DeGnore in early March that she had recently seen Jeffrey Neal for her complaints of fibromyalgia.  (Tr. 161).  The right forefoot was tender with swelling of the second toe and early mild hammering.  (Id.).  DeGnore injected the right second MTPJ because of the patient's  persistent synovitis and

10

Abner

recommended a custom orthotic. (Id.). She did not feel the plaintiff could return to work, although a separate note indicated this was only until seen again (Tr. 161, 165). She recommended that the plaintiff see Dr. Neal again regarding her significant knee pain. (Tr. 161).

Kelly Cole, a physician at Dr. Neal's clinic, had apparently given the plaintiff a work excuse slip for March. (Tr. 166). The doctor wrote a short letter on March 31, 2002 indicating that she was evaluating Abner. (Tr. 156). Due to the patient's apparent fibromyalgia, she recommended no prolonged standing or sitting, no lifting more than 10 pounds and no repetitive upper extremity movements. (Tr. 156).

Several days later, the plaintiff returned to Dr. DeGnore complaining of left ankle and hind foot pain. (Tr. 160). DeGnore, noting inflammation of the bursa in front of the Achilles tendon and possible underlying inflammatory arthritis, recommended standing and walking only one out of eight hours. (Id.). An anti-inflammatory medication, physical therapy and rest in a 3D walker were recommended. (Tr. 159).

DeGnore's colleague, Dr. Paul Nicholls, evaluated the plaintiff's complaints of knee pain. (Tr. 159). Chondromalacia patella was the diagnosis. (Id.). Physical therapy was recommended (later discontinued due to pain as per Tr. 158)[1] and the doctor stated that he did not feel she could work at a job requiring her to sit or stand

---

[1]See also Tr. 210.

11

full time. (Id.). Nicholls signed a work slip clarifying that this meant standing/walking one hour out of eight hours, with sitting "straight," presumably referring to the knee, "until further notice" (Tr. 164).

In May, the plaintiff returned to DeGnore and reported that her foot was better, although she still had a mild ache, probably from immobilization. (Tr. 158). Her problems were compounded by fibromyalgia. (Id.). As of May, 2003 her feet had a normal range of motion and no tenderness. (Id.).[2]

Medical Reviewer P. Sarauga examined the record, and crediting the plaintiff with having fibromyalgia, osteophyte at C3-4 and tendonitis of the foot, found the plaintiff capable of light level work with standing/walking at least two hours a day, and restrictions on climbing and crawling. (Tr. 167-173A). The reviewer noted DeGnore's March 5, 2003 work excuse for the period until May, 2003 but did not explain why the greater standing/walking restrictions of DeGnore and Nicholls, the greater lifting and repetitive movement limitations of Cole and the bending/squatting limitations of Catron were to be rejected. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

A second medical reviewer completed a very similar assessment (Tr. 188-192), citing no additional rationale and not mentioning most of the assessments of record. Nevertheless, he did reject the opinion of Kelly Cole as providing no

_____

[2]The May 28, 2003 progress note was incomplete. (Tr. 158).

12

Abner

rationale for its limitations (Tr. 192) but did not address the multiple other opinions
of record.

Subsequently-submitted information included a note from William Brooks
indicating that the plaintiff was to remain off work from her December, 2002
evaluation by him until she was evaluated by a rheumatologist. (Tr. 209).

Additionally, Exhibit 13F showed that Kelly Cole (who earlier had only
submitted the unsupported short letter listing restrictions) had written a detailed new
patient evaluation letter on March 31, 2003 noting tenderness over the second MTP
on the right foot and thickening and tenderness on the left wrist and fibromyalgia
syndrome tender points. (Tr. 305-306). Further laboratory tests were ordered. (Tr.
306). Cole opined that Abner was unable to return to her bank teller job and should
"look into" Vocational Rehabilitation. (Tr. 306).

Osteopenia was diagnosed by Cole after reviewing a Dual Energy X-ray
Absorptiometry (DEXA) (Tr. 300). The patient was at increased risk for fractures at
a young age; Cole recommended regular aerobic exercise as well as increased
calcium intake. (Tr. 289, 293). As of September, the patient's fibromyalgia was said
to be "still quite symptomatic" (Tr. 291). She was felt to have significant stiffness.
(Id.). In December, Cole again referred to "still symptomatic" fibromyalgia and
episodes of synovitis and other conditions. (Tr. 289).

13

Abner

Cole had apparently referred the patient to the Bone Clinic of the University of Kentucky Medical Center's Internal Medicine Department (UK) in early 2004. (Tr. 270). The report produced referred to an abnormal gait due to pain, but regular x-rays of the shoulders, hips and feet were negative. (Tr. 269, 271). There was osteopenia by the bone density measurements. (Tr. 272-272).

The plaintiff returned to Cole in June. "Extremely symptomatic" fibromyalgia syndrome, osteopenia (with current evaluation at UK pending) as well as other conditions were diagnosed. (Tr. 257). A follow-up RA factor was negative. (Tr. 265).

In July another bone density test was performed and revealed osteopenia, with a decline in the spine and hips over the past year. (Tr. 240). The UK physician who ordered the test wrote Cole and noted tenderness of the knees, ankles and tib-fib region. (Tr. 237). Osteoporosis by history of spontaneous fracture and osteopenia by hip and bone mineral density measurement. (Id.). The doctor noted that the patient showed an "interesting pattern of metabolic bone disease . . . [with] vitamin D25 . . . either absent or extremely low." (Id.).

In the September, 2004 visit to Dr. Cole, the diagnoses of Vitamin D deficiency, osteopenia, a history of stress fractures, degenerative and inflammatory arthritis and fibromyalgia continued. (Tr. 223).

14

Abner

In late October, the patient began to see Dr. J. Michael Watts. Fibromyalgia and hypertension were among the diagnoses made during what appear to be four office visits; clinical data in the progress notes was minimal except for normal blood pressure readings, one reference to positive lumbar tenderness (Tr. 341), and references to multiple trigger points (Tr. 340). After apparently seeing the patient once, Watts completed an assessment form suggesting a severely limited amount of sedentary work (Tr. 342, 344-346).

A December 1, 2004 follow-up clinic note from UK including diagnoses of Vitamin D deficiency and osteoporosis. (Tr. 350).

In March, 2005 a residual functional capacity questionnaire was faxed from Kelly Cole's office. The plaintiff's condition was said to meet the criteria of fibromyalgia. (Tr. 353). Cole indicated that Abner was to stand/walk less than two hours at one time, and sit _less than_ two hours at a time, the least category noted on that page of the form. (Tr. 355). She needed a job allowing her to shift positions at will (Tr. 356). She was never to lift 10 pounds and would sometimes have significant limitations in reaching, handling and fingering. (Tr. 356). She could only occasionally bend and twist. (Tr. 357).

Reviewing this information, it is _clear_ that the non-examining medical reviewers did not see or comment on the vast majority of opinions from treating sources, so the reviewers' opinions were of limited value. Even less value as to the

15

Abner

opinions they did address, since Cole (previously rejected as unsupported by any clinical evidence) obviously supported subsequent opinions with plenty of data, including testing/documenting new conditions such as osteoporosis and osteopenia. There was no evidence, as the plaintiff aptly notes, that several physicians made their opinions merely as an "accommodation to the plaintiff," other than one note which primarily concerned a handicapped parking permit by Dr. Watts (Tr. 311). Neither Coles' March 31, 2003 assessment restrictions (Tr. 156) nor Nicholls' April, 2003 restrictions (Tr. 164) were fully included in the hypothetical questions (Tr. 392), and Catron (Tr. 155) was ignored; simultaneously, it is clear that Watts and Cole's later statements would clearly preclude her past work, if not all work (Tr. 306, 342, 344-346, 356).

The case must be remanded for more serious evaluation of all treating physicians' opinions.

This the ___30___ day of November, 2006.

Gthe Centhonk

G. WIX UNTHANK
SENIOR JUDGE